IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL L. DeVLIEGER,<br>    Plaintiff, | )<br>)<br>) |
| vs. | )    C.A. No. 1:24-CV-159<br>) |
| CITY OF WARREN PENNSYLVANIA<br>and PENNSYLVANIA MUNICIPAL<br>SERVICE COMPANY,<br>    Defendants. | )<br>)<br>)<br>) |

MEMORANDUM OPINION

I.  INTRODUCTION

Defendants City of Warren and Pennsylvania Municipal Service Company ("PAMS") move to dismiss Plaintiff Carl L. DeVlieger's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF Nos. 8, 10. Plaintiff opposes the motions (ECF Nos. 12, 14), and Defendants have filed replies (ECF Nos. 16, 17). For the reasons set forth below, the Court will deny Defendant PAMS's motion to dismiss and will grant the City of Warren's Motion to Dismiss.

II.  FACTUAL ALLEGATIONS

In his complaint, Plaintiff, Carl L. DeVlieger, alleges that he owns real property in the City of Warren, Pennsylvania, including the premises located at 123 Sixth Avenue, Warren, Pennsylvania. ECF No. 1 at ¶ 8. The City of Warren provides sewage service to these properties and has contracted with Pennsylvania Municipal Service Company ("PAMS") to collect overdue water and sewage fees on its behalf. *Id.* at ¶ 9. DeVlieger allegedly failed to make payments for

sewage services since August 2021, resulting in an outstanding balance of $1,200.84 as of March 16, 2023. *Id.* at ¶ 10.[1]

On August 16, 2023, PAMS issued a Water Service Termination Notice to DeVlieger stating that his water service would be terminated on or about September 5, 2023, due to nonpayment of sewage fees. ECF No. 1-2. The Notice informed DeVlieger that he would have the opportunity to challenge the sewage fee:

> You can delay or avoid the termination of your water service by either paying the delinquent amount in full on or before August 28, 2023 by complying with the procedures set forth in Pennsylvania State Act of 2006 P.L. 85, NO. 28 Section 502 as amended on or before August 28, 2023 or by requesting a hearing before the Pennsylvania Municipal Service Company at which time you will have an opportunity to present your reasons, arguments, and proof as to why you do not owe the delinquent amount or why you should not be required to pay it within the prescribed time.

ECF No. 1-2. The Notice further explained:

> If you desire a hearing, you must request one by 8/26/2023 by filing a written request for a hearing with Pennsylvania Municipal Service Company. This written request for a hearing must be delivered to the Pennsylvania Municipal Service Company or postmarked by 8/26/2023. By properly filing a request for a hearing, the termination of your water service shall be delayed until the matter is resolved. Upon receipt of your request for a hearing, you shall be notified by certified mail of the time, date and place of your hearing. At your hearing, you will have an opportunity to present arguments and proof substantiating your position.

*Id.*

On August 25, 2023, DeVlieger mailed a timely written request to PAMS for a hearing pursuant to the instruction on the Termination Notice. ECF No. 1-3. Plaintiff alleges that on August 28, 2023, a PAMS representative informed him by phone that his hearing request was denied and that no formal written decision would be issued. ECF No.1 at ¶ 14. No hearing was ever held. *Id.*

---

[1] On October 14, 2022, the City filed a Municipal Claim for unpaid sewer service charges against the property at 123 Sixth Avenue. ECF No. 11 at 2.

at ¶ 15. Despite DeVlieger's request for a hearing, the City terminated his water service on or about September 5, 2023. *Id.* at ¶ 13.

After the termination, Gary Swartz, a representative of the City's Building Code Department, contacted DeVlieger and warned that the property at 123 Sixth Avenue would be condemned if water service was not restored. *Id.* at ¶ 16. DeVlieger did not correct the violations or appeal the notice, and on October 23, 2023, the City posted condemnation notices at the property. *Id.* at ¶¶ 16-17.

DeVlieger commenced this action on June 6, 2024, alleging that Defendants' actions violated his procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.[2] He seeks to enforce his constitutional rights by way of 42 U.S.C. § 1983 and he seeks monetary and declaratory relief.

### III. STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court accepts as true all well pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[2] In his Opposition brief, Plaintiff makes plain that he is not pursuing a claim under the Pennsylvania Constitution. *See* ECF No. 15, pages 10-11.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept as true unsupported conclusions and unwarranted inferences. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint and any exhibits attached to the complaint and matters of public record. *Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 560 (3d Cir.2002). Courts also may consider a document that a defendant attaches as an exhibit to a motion to dismiss, if the authenticity of the document is undisputed and the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Further, while a court must accept all factual allegations in Plaintiff's complaint as true, courts are not compelled to accept "unsupported conclusions and unwarranted inferences[,]" (*see, Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997)), or "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## IV. DISCUSSION

### A. PAMS' Motion to Dismiss

At Count I of the Complaint, Plaintiff brings a procedural due process claim under 42 U.S.C. § 1983, alleging that PAMS deprived him of constitutionally protected property interests in his utility services without due process of law. *See generally*, ECF No. 1. The claim centers on the termination of his water service on September 5, 2023, despite his timely compliance with PAMS' stated procedures—including his August 25, 2023 written request for a hearing to contest

the underlying sewage fees. *Id.* at 13. Plaintiff argues that the Notice of Termination expressly guaranteed a delay in termination if a hearing was properly requested, yet PAMS neither provided the hearing nor stayed the termination, thereby denying him the opportunity to be heard at a meaningful time and in a meaningful manner. ECF No. 15 at 7. PAMS moves to dismiss the claim against it arguing that Plaintiff had other post-deprivation procedures available to him.

The Fourteenth Amendment to the United States Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (citing U.S. CONST. amend. XIV, § 1).[3] To state a claim under section 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir.2006) (citing *Alvin*, 227 F.3d at 116).

It is well-settled that the expectation of utility service rises to the level, articulated in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), and *Perry v. Sinderman*, 408 U.S. 593, 602 (1972), of a "legitimate claim of entitlement" encompassed in the category of property interests protected by the Due Process Clause. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). As a constitutionally cognizable property interest, the interest in receiving water service is subject to the tri-partite balancing analysis of 1) the property interest, 2) the risk of erroneous deprivation,

---

[3] Whether PAMS acted under color of law is a threshold question that has not been disputed in this case. *See West v. Atkins*, 487 U.S. 42, 48 (1988)("The 'color of state law' requirement serves as a critical gatekeeping function, ensuring that § 1983 liability attaches only to those actions that reflect the exercise of governmental power rather than purely private conduct.")(internal citations omitted). Here, Plaintiff avers that PAMS acted under color of law as a government contractor. ECF No. 1 at 23.

and 3) the government's interest, articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 (1976), for a determination of what procedural safeguards are due. *See Memphis*, 436 U.S. at 17–19 (applying the *Eldridge* balancing approach to find that "some administrative procedure for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding" of utility services).

In matters of utility services, the state must provide a hearing or other opportunity to be heard before depriving a person of his property interest. *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 483 (3d Cir. 2014) (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). Specifically, a pre-deprivation process must be afforded to residential customers facing termination of services for unpaid utility bills. *Memphis*, 436 U.S. at 22. The *Memphis* Court unequivocally stated:

> "Notice must provide the residential customer with the availability of an administrative procedure to consider the customer's complaint of erroneous billing, and the opportunity to present the complaint to a designated employee empowered to review disputed bills and rectify errors. An informal administrative process may be enough to constitute due process."

*Id.*

The notice given to Plaintiff by PAMS purported to provide the requisite notice and opportunity to him under the law. However, Plaintiff pleads that after his attempt to follow the procedures as outlined on the notice itself, that PAMS verbally denied him a hearing, and declined to provide him with a written notice explaining that denial. *See* ECF No. 1 at ¶¶ 13-14. Dispositive to Plaintiff's claims, at this stage, is that "a complete constitutional violation has (allegedly) already occurred; if the Constitution requires pre-termination procedures." *See, Alvin v. Suzuki*, 227 F.3d 107, 120 (3d Cir. 2000)(citing *Stana v. School Dist. of Pittsburgh*, 775 F.2d 122, 129 (3d Cir.1985) (indicating that following *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), there can be no requirement to pursue post-deprivation remedies when pre-deprivation notice or hearing is required for due process); *Zinermon*, 494 U.S. at 132 ("In situations where the

State feasibly can provide a pre-deprivation hearing before taking property, it generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate for the taking."). Moreover, "the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures." *Alvin*, 227 F.3d at 120.

Accordingly, PAMS' arguments that Plaintiff had other procedures available to him post-deprivation misses the mark.[4] *See* ECF No. 9 at 7 (relying on *Gagliardi v. Clark*, 2006 U.S. Dist. LEXIS 70509 (W.D. Pa. Sep. 28, 2006)). Furthermore, PAMS' argument that Plaintiff should have sought redress under the Pennsylvania Water Services Act, 53 P.S. § 3102.502, is disingenuous, at best, when PAMS' own Notice of Termination explains the avenues a recipient may pursue in order to prevent pre-deprivation relief and does not reference the Water Services Act. *See* ECF No. 1-2. Plaintiff is simply not charged under the Due Process Clause with pursuing every tangible process available.

PAMS cites no caselaw—and this Court finds none—holding that a plaintiff must exhaust every available administrative remedy before filing a procedural due process claim in federal court. To the contrary, when "federal claims are premised on 42 U.S.C. § 1983 ... we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Hochman v. Board of Ed. of City of Newark*, 534 F.2d 1094, 1096 (3d Cir.1976). *See e.g., M.G. v. Crisfield*, 547 F. Supp. 2d 399 (D.N.J. 2008) (plaintiff not required to exhaust other remedies before pursuing federal procedural due process claims).

---

[4] In its motion to dismiss, the City of Warren raises a similar argument which the Court also finds unpersuasive.

To be sure, the holding in *Memphis,* and the rationale of *Zinermon* foreclose the alternative exhaustion arguments. The *Memphis* Court plainly stated that "the failure to afford [plaintiff] an opportunity to present their complaint to a designated employee empowered to review disputed bills and rectify error, petitioners deprived respondents of an interest in property without due process of law." *Memphis,* 436 U.S. at 22. *Zinermon* states that a procedural due process violation has occurred when the state fails to provide due process. 494 U.S. at 126. A plausible due process violation occurred the moment Plaintiff was denied the promised pre-deprivation hearing, regardless of any alternative remedies. In this regard, Plaintiff's factual allegations are sufficient to state a procedural due process claim against PAMS. Defendant's motion to dismiss will be denied.

### B.     City of Warren's Motion to Dismiss

The City of Warren moves to dismiss the procedural due process claim against it on the basis that Plaintiff has failed to meet the pleading requirements to establish municipal liability arising in the factual circumstances here.

Generally, a municipality cannot be held vicariously liable under a theory of *respondeat superior* for employees' actions under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 665–83 (1978). However, municipalities can be liable when they maintain a "policy or custom" that violates constitutional rights. *Donahue v. Borough of Collingdale,* 714 F.Supp.3d 504, 516 (E.D. Pa.2024) (citing *Thomas v. Cumberland County,* 749 F.3d 217, 222 (3d Cir. 2014)). A city can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury that the government as an entity is responsible for under § 1983." *Butler v. Upper Merion Township*, 765 F.Supp.3d 441, 451 (E.D. Pa. 2025) (quoting *Monell*, 436 U.S. at 694).

To establish *Monell* liability, a plaintiff must allege that: "(1) he possessed a constitutional right of which he was deprived; (2) the municipality being sued had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Butler*, 765 F.Supp.3d at 451 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-91 (1989)). Plaintiff's complaint fails to identify any municipal policy or the moving force behind the alleged constitutional violation. Because Plaintiff has failed to sufficiently allege municipal liability, his procedural due process claim cannot survive this threshold inquiry.[5] Consequently, the City's motion to dismiss will be granted.

In his opposition to the motion to dismiss, Plaintiff explains his theory of municipal liability, arguing that the procedure set forth in the Water Service Termination Notice is the policy, custom, and practice of both Defendants and that the denial of Plaintiff's right to a hearing without any written explanation is also a policy, custom, or practice or "at the very least, a decision officially adopted and promulgated" by both Defendants.[6] ECF No. 15 at 10. Plaintiff's argument does not align with applicable legal standards. A "policy" is an act of the official decision-making body while "customs" are subterranean practices that are "so widespread as to have the force of law." *Donahue v. Borough of Collingdale*, 714 F.Supp.3d 504, 516 (E.D. Pa. 2024) (quoting *Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). Policy, custom, and practice, as well as moving force, must be factually supported in the complaint. Although Plaintiff has not

---

[5] Defendant City of Warren advances multiple other arguments that the Court need not address at this time.

[6] Arguments raised for the first time in an opposition brief are not equivalent to factual allegations in a pleading.

adequately alleged facts to support municipal liability against the City of Warren, this Court cannot say that Plaintiff could not do so. Accordingly, Plaintiff will be allowed to file an amended complaint in this regard.

## IV. CONCLUSION

For the reasons set forth in this Opinion, Defendant PAMS's Motion to Dismiss will be denied. Defendant City of Warren's Motion to dismiss will be granted without prejudice.

An appropriate Order follows.